**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WILDLIFE REFUGE ASSOCIATION, FRIENDS OF BLACKWATER, and SIERRA CLUB, | Civil Case No. 23-CV-2203-BAH |
|        Plaintiffs, | |
| v. | |
| DEB HAALAND, Secretary of Interior, and UNITED STATES FISH AND WILDLIFE SERVICE, | |
|        Defendants, | |
| SAFARI CLUB INTERNATIONAL, NATIONAL RIFLE ASSOCIATION OF AMERICA, and SPORTSMEN'S ALLIANCE FOUNDATION, | |
|        Proposed Defendant-Intervenors. | |

**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION TO INTERVENE BY SAFARI CLUB INTERNATIONAL, NATIONAL RIFLE ASSOCIATION OF AMERICA, AND SPORTSMEN'S ALLIANCE FOUNDATION**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.   Hunting and Fishing on the National Wildlife Refuge System ....................................... 2
    B.   Canaan Valley National Wildlife Refuge.................................................................. 5
    C.   The 2022-2023 Station-Specific Hunting and Sport Fishing Regulations ...................... 5
    D.   Procedural History of this Action ........................................................................... 7

III.  PROPOSED DEFENDANT-INTERVENORS ........................................................ 7

    A.   Safari Club International ...................................................................................... 7
    B.   National Rifle Association of America...................................................................... 8
    C.   Sportsmen's Alliance Foundation........................................................................... 9

IV.   ARGUMENT..................................................................................................... 10

    A.   The Hunting Coalition should be granted intervention as of right. .............................. 10

        1.   The Hunting Coalition has Article III standing...................................................... 10

        2.   The motion to intervene is timely....................................................................... 12

        3.   The Hunting Coalition has significant protectable interests in the subject matter of this litigation. ......................................................................................... 13

        4.   Disposition of this case may impair the Hunting Coalition's ability to protect its interests........................................................................................................ 15

        5.   Federal Defendants do not adequately represent the Hunting Coalition's interests........................................................................................................ 16

    B.   Alternatively, the Hunting Coalition should be granted permissive intervention. ......... 18

    C.   As a final alternative, the Hunting Coalition requests amicus curiae status. ................ 20

V.    CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**<u>Cases</u>**

100Reporters LLC v. U.S. Dep't of Justice,
307 F.R.D. 269 (D.D.C. 2014) ................................................................. 13

Am. Horse Prot. Ass'n v. Veneman,
200 F.R.D. 153 (D.D.C. 2001) ................................................................. 10

Amador Cnty. v. U.S. Dep't of Interior,
772 F.3d 901 (D.C. Cir. 2014) ................................................................. 12

Cnty. of San Miguel v. MacDonald,
244 F.R.D. 36 (D.D.C. 2007) ................................................................... 15

Crossroads Grassroots Policy Strats. v. Fed. Election Comm'n,
788 F.3d 312 (D.C. Cir. 2015) .......................................................... passim

Ctr. for Biological Diversity v. U.S. Dep't of Interior,
No. 22-cv-1716, 2022 WL 16833967 (D.D.C. Nov. 9, 2022) ............... 11

Ctr. for Biological Diversity v. U.S. Forest Serv.,
No. 21-15907, 2023 WL 5660071 (9th Cir. Sept. 1, 2023) ..................... 8

Defs. of Wildlife v. Jackson,
284 F.R.D. 1 (D.D.C. 2012) ..................................................................... 13

Dist. of Columbia v. Potomac Elec. Power Co.,
826 F. Supp. 2d 227 (D.D.C. 2011) ........................................................ 15

Fund for Animals v. Hall,
777 F. Supp. 2d 92 (D.D.C. 2011) ............................................................ 9

Fund for Animals, Inc. v. Norton,
322 F.3d 728 (D.C. Cir. 2003) .......................................................... passim

Humane Soc'y of the U.S. v. U.S. Dept. of Agric.,
19-CV-2458, 2023 WL 3433970 (D.D.C. May 12, 2023) ................ 12, 16

Natl. Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,
519 F. Supp. 2d 89 (D.D.C. 2007) .......................................................... 20

Natural Res. Def. Council v. Costle,
561 F.2d 904 (D.C. Cir. 1977) ........................................................... 18, 19

Nuesse v. Camp,
385 F.2d 694 (D.C. Cir. 1967) ........................................................... 13, 18

Roane v. Leonhart,
741 F.3d 147 (D.C. Cir. 2014) ........................................................... 10, 13

Trbovich v. United Mine Workers of Am.,
404 U.S. 528 (1972)................................................................................. 16

United States v. Philip Morris USA Inc.,
No. 99-CV-2496, 2005 WL 8160465 (D.D.C. Sept. 1, 2005) ............... 20

WildEarth Guardians v. Salazar,
    272 F.R.D. 4 (D.D.C. 2010) ........................................................................... 15

Wilderness Soc'y v. Babbitt,
    104 F. Supp. 2d 10 (D.D.C. 2000) ................................................................. 10

**Statutes**

16 U.S.C. § 668dd ............................................................................................ 3, 4

**Rules**

87 Fed. Reg. 35136 (June 9, 2022) ............................................................... 1, 5, 6

87 Fed. Reg. 57108 (Sept. 16, 2022) ............................................................ passim

Federal Rule of Civil Procedure 24 ............................................................... passim

**Regulations**

50 C.F.R. § 20.108 ................................................................................................ 5

50 C.F.R. § 20.21(j) .............................................................................................. 5

50 C.F.R. § 32.67(a) ............................................................................................. 5

**Legislative History**

143 Cong. Rec. H3225-01 (June 3, 1997) ............................................................ 4

143 Cong. Rec. H7646-02 (Sept. 23, 1997) .......................................................... 4

## I.    INTRODUCTION

Safari Club International ("SCI"), National Rifle Association of America ("NRA"), and Sportsmen's Alliance Foundation ("SAF") (together, the "Hunting Coalition") seek to jointly intervene in this case to defend the U.S. Fish and Wildlife Service's ("Service") choice not to take any actions related to hunting and fishing with respect to the Canaan Valley National Wildlife Refuge ("Canaan Valley Refuge") in West Virginia.  In June 2022, the Service proposed to open new hunting and fishing opportunities on 19 different National Wildlife Refuges, including Canaan Valley Refuge.  87 Fed. Reg. 35136 (June 9, 2022) ("Proposed Hunt Fish Rule").  The Proposed Hunt Fish Rule also announced that Canaan Valley Refuge would propose a ban on lead ammunition "in the 2026-2027 annual rule."  *Id.* at 35138.  But after the West Virginia Division of Natural Resources–Wildlife Resources Section ("the State") and many others commented in opposition to the proposed plan to phase out the use of lead ammunition and tackle, the Service declined to finalize any of the proposed changes to Canaan Valley Refuge, leaving the status quo in place.  87 Fed. Reg. 57108 (Sept. 16, 2022) ("2022 Hunt Fish Rule").  In contrast, the Service opened new hunting and fishing opportunities on other National Wildlife Refuges in the 2022 Hunt Fish Rule.  And it stated that it planned to propose to phase out the use of lead ammunition and tackle on these refuges in a future rulemaking.

In this litigation, the National Wildlife Refuge Association, Friends of Blackwater, and Sierra Club ("Plaintiffs") challenge the Service's decision to not finalize the plan to propose a phase out of lead ammunition and tackle on Canaan Valley Refuge.  Dkt. 1.  The Hunting Coalition seeks to intervene in defense of the Service's decision.

The Hunting Coalition's members hunt and fish on Canaan Valley Refuge.  They can and do use lead ammunition and fishing tackle, as appropriate, to enjoy outdoor recreation in this

beautiful area.  They like the status quo.  And they will be injured if Plaintiffs succeed in this lawsuit.  Plaintiffs' endgame is to force the Service to prohibit the use of lead ammunition and tackle—despite the State's objections, the lack of easy access to alternatives, and the lack of science tying wildlife impacts from lead ammunition and tackle to Canaan Valley Refuge.  The Hunting Coalition seeks to intervene to defend the Service's prerogative to decline to adopt such restrictions and its members' ability to use lead ammunition and tackle on the Refuge.

As explained below, the Hunting Coalition should be granted intervention as of right because it has Article III standing and satisfies all elements of Federal Rule of Civil Procedure 24(a): (1) this motion is timely; (2) the Hunting Coalition's members have significant protectable interests in the subject of this case; (3) the Hunting Coalition's interests will be harmed if Plaintiffs prevail; and (4) the existing parties do not adequately represent the Hunting Coalition's interests.  Alternatively, the Hunting Coalition should be granted permission to intervene because this motion is timely, and its defenses and the main case share common questions of law and fact.  As a final alternative, should the Court deny intervention under Federal Rule 24, the Hunting Coalition respectfully seeks leave to participate as amicus curiae in support of the Service and Defendant Deb Haaland ("Federal Defendants").

## II.   BACKGROUND

### A.   <u>Hunting and Fishing on the National Wildlife Refuge System</u>

The National Wildlife Refuge System ("Refuge System") encompasses 95 million acres and 568 refuges across all 50 U.S. States and five territories.  The first refuge was designated by President Theodore Roosevelt, a noted hunter, and the Refuge System has largely been funded and supported by the financial and personal contributions of hunters and anglers ever since.

Each refuge is guided by its individual purposes and conservation plan.  The Service must administer the Refuge System pursuant to the National Wildlife System Improvement Act of 1997, 16 U.S.C. § 668dd ("Improvement Act").  The Improvement Act was drafted by former U.S. Representative Don Young, another noted hunter (and SCI and NRA member), who included the finding that, while the Refuge System "was created to conserve fish, wildlife, and plants and their habitats," "this conservation mission has been facilitated by providing Americans opportunities to participate in compatible wildlife-dependent recreation, including fishing and hunting, on System lands and to better appreciate the value of and need for fish and wildlife conservation."  Pub. L. No. 105-57, 111 Stat. 424.

According to the Improvement Act, the "mission of the [Refuge] System" is "to administer a national network of lands and waters for the conservation, management, and where appropriate, restoration of the fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans."  16 U.S.C. § 668dd(a)(2).  In doing so, the Act directs the Service to "administer" the Refuge System to make compatible wildlife-dependent recreational uses, including hunting and fishing, the system's "priority general public uses."  The Service must give these uses "priority consideration in refuge planning and management."  16 U.S.C. §§ 668dd(a)(3)(C), 688ee(2).  The Act further requires the Service, "[i]n administering the [Refuge] System," to provide for wildlife and habitat conservation, recreational opportunities, and increased opportunities for families to safely engage in "traditional outdoor activities, such as fishing and hunting" (among other things).  16 U.S.C. § 668dd(a)(4)(K).  Finally, the Act specifically mandates that "[r]egulations permitting hunting or fishing of fish and resident wildlife within the System shall be, to the extent

practicable, consistent with State fish and wildlife laws, regulations, and management plans."  16 U.S.C. § 668dd(m).

In passing the Improvement Act in 1997, members of Congress discussed the many positive benefits that hunters and anglers provide to the Refuge System.  As one example, Congress recognized that "hunters and anglers are the unquestioned leaders when it comes to wildlife and fisheries restoration and conservation.  America's hunters and anglers have contributed well over $6 billion to wildlife and fisheries restoration over the past 60 years. … And with this legislation, hunters and anglers are again leading the conservation movement." 143 Cong. Rec. H7646-02, at *H7647 (Sept. 23, 1997) (statement of Rep. Tanner).[1]  Similarly, members of Congress pointed out "that it was the hunters who set up and who maintained and who preserved, protected, and funded the wildlife refuge system, and it is the hunter with his small contribution of one duck stamp each hunting season that makes possible the continued acquisition of land for the precious purpose of protecting this system."  143 Cong. Rec. H3225-01, at *H3229 (June 3, 1997) (statement of Rep. Dingell).[2]

The Improvement Act was passed and signed into law on October 9, 1997—six years after the Service adopted a regulation that prohibits the use of lead ammunition for hunting waterfowl, out of concern of the impact that lead has on certain waterfowl species.  Of course, Congress was aware of that regulation and the grounds for the Service's concern.  Yet it chose

---

[1] Since 1997, contributions from hunters and anglers under the Service's Wildlife and Sport Fish Restoration program have increased significantly.  As of 2023, "the Service has distributed more than $27 billion through annual apportionments for state conservation and public access projects, which have been matched by approximately $9 billion in investments by recipient fish and wildlife agencies."  *Over $1.6 Billion Will Support State Fish and Wildlife Conservation and Outdoor Access*, Service (Mar. 3, 2023) available at https://www.fws.gov/press-release/2023-03/over-16-billion-will-support-conservation-agencies-and-outdoor-access.

[2] In justifying why it should be adopted, Representative Dingell also noted that NRA and SCI, among others, supported the Improvement Act.  *Id.*

4

not to restrict the use of lead ammunition or tackle across the Refuge System.  Rather, it chose to identify hunting and fishing as priority wildlife-dependent recreational uses.

**B.**     **Canaan Valley National Wildlife Refuge**

In August 1994, Canaan Valley National Wildlife Refuge was established as the nation's 500th National Wildlife Refuge.  *See* Canaan Valley National Wildlife Refuge, Comprehensive Conservation Plan 1-3 (2011) ("Conservation Plan").[3]  Canaan Valley Refuge spans 16,983 acres in the Canaan Valley, 3,200 feet above sea level in the Allegheny Mountains of West Virginia.  *Id*.  It "provides high quality, safe, wholesome, and diverse opportunities for education and recreation, especially hunting and wildlife observation."  *Id*. at 1-18 (Refuge Vision Statement).

Nearly all of Canaan Valley Refuge is open to hunting.  *Id.* at B-43 (Map B-1).  The Refuge's hunting program operates in accordance with State and federal regulations.  *Id.* at B-26.  Hunting with lead ammunition is permitted in the State of West Virginia and on the Refuge for all species except waterfowl.  50 C.F.R. §§ 20.21(j), 20.108, 32.67(a).  The Conservation Plan raises no concerns about any alleged negative impact from the use of lead ammunition.  Regulation of fishing on the Refuge closely follows State regulations, with lead sinkers allowed throughout the Refuge, except in freshwater ponds.  Service, Canaan Valley National Wildlife Refuge, Recreational Fishing Plan 5 (2020) ("Fishing Plan").[4]

**C.**     **The 2022-2023 Station-Specific Hunting and Sport Fishing Regulations**

In June 2022, the Service proposed to expand and open new hunting and fishing opportunities on 19 refuges, including Canaan Valley Refuge.  87 Fed. Reg. at 35137–38.  The

---

[3] The Conservation Plan is available at
https://www.fws.gov/sites/default/files/documents/CVR%20CCP.pdf.

[4] The Fishing Plan is available at
https://www.fws.gov/sites/default/files/documents/Canaan%20Valley%20NWR%20Fishing%20Plan_%20CD_%20EA.pdf.

Proposed Hunt Fish Rule also proposed to require the use of non-lead ammunition and tackle by September 2026 on Patoka River National Wildlife Refuge. *Id.* at 35138.  The proposed rule also announced that nine other refuges, including Canaan Valley Refuge, were planning to propose a phase out of using lead ammunition in the 2026–2027 Station-Specific Hunting and Fishing Regulations annual rule.  *Id.*  In response to the Proposed Hunt Fish Rule, the Service received more than 45,000 public comments, most of which were "form letters" or "duplicates of other comments."  87 Fed. Reg. at 57109.

Notably, the West Virginia Division of Natural Resources—Wildlife Resources Section filed a public comment in which the State opposed the announced plan to propose phasing out the use of lead ammunition and tackle on Canaan Valley Refuge.[5]  In its comment letter, the State "strongly oppose[d] the complete phase out of lead ammunition on [Canaan Valley Refuge]."  West Virginia Letter at 1.  The State reasoned that the prohibition of lead on the Refuge "may significantly limit hunter activity" because "[n]on-lead ammunition is often unavailable and far more expensive than lead ammunition" and "non-lead ammunition may be incompatible with some firearms."  *Id.*  This reduction in hunting would likely reduce the number of deer harvested on the Refuge, which in turn "could impact deer herd health and adversely affect environmental conditions on the refuge as a result of over browsing by deer." *Id.* at 2.  The State also noted that the Service's plan to propose a lead phase-out "fails to document impacts from lead ammunition specifically on [Canaan Valley Refuge] or … similarly situated refuges within [Service] Region 5."  *Id.*  And the State asserted that "there is simply no scientific basis to justify the elimination of lead ammunition for the hunting of wild turkey and

---

[5] The State's comment letter in response to the Proposed Hunt Fish Rule is available at https://www.regulations.gov/comment/FWS-HQ-NWRS-2022-0055-0840.

small game (e.g., upland game birds, rabbit, gray or fox squirrel, etc.)." *Id.*  The State concluded, "[u]ntil there is sufficient justification for the proposed action and a practical alternative to lead ammunition, the [State] opposes phasing out lead ammunition on [Canaan Valley Refuge]." *Id.* Finally, the State suggested that the Service seek input from other organizations to evaluate the best available science related to the use of lead ammunition and fishing tackle. *Id.*

In the 2022 Hunt Fish Rule, the Service addressed many of the comment letters it received.  87 Fed. Reg. 57109.  In response to the State's comments, the Service withdrew all proposed regulatory changes relevant to Canaan Valley Refuge and concluded that it "may revisit all or some of the proposed changes in a future rulemaking, but at this time further discussion and coordination with the State is necessary." *Id.* at 57111.

### D.   Procedural History of this Action

Plaintiffs filed their Complaint on July 31, 2023, challenging the Service's decision in the 2022 Hunt Fish Rule to not finalize the plan to propose a phase out of lead ammunition and tackle on Canaan Valley Refuge.  Dkt. 1.  Plaintiffs' Complaint includes one cause of action—that the Service violated the Improvement Act.  Compl. at 29.  At the time of this filing, Federal Defendants have not responded to Plaintiffs' Complaint.

## III.   PROPOSED DEFENDANT-INTERVENORS

### A.   Safari Club International

SCI is a non-profit organization with approximately 70,000 members and advocates worldwide.  Some of those members hunt and fish on Canaan Valley Refuge.  *E.g.*, Ex. A, LaCivita Decl., ¶¶ 4–5; Ex. B, LaCivita Jr. Decl., ¶ 5.  SCI's missions include the conservation of wildlife, protection of the hunter, and education of the public about hunting and its use as a conservation tool.  Ex. C, Goodenow Decl. ¶ 5.  SCI has been a long supporter of the Refuge

System and protecting hunting opportunities on refuges.  SCI has defended the Refuge System in litigation, including in a decade-long case over the Service's compliance with the National Environmental Policy Act when opening hunting on Refuge System lands.  *Id.* ¶ 7.  SCI has also routinely submitted comments in support of the opening and protection of hunting and fishing opportunities on refuges, as well as comments in opposition to lead ammunition and tackle restrictions where unsupported by site-specific science.  *Id.* ¶ 8.  SCI "strongly oppose[d] the proposed restrictions on the use of lead ammunition and fishing tackle" in the Proposed Hunt Fish Rule, including the future plan to propose a phase out on Canaan Valley Refuge, especially without State support.[6]

### B.     National Rifle Association of America

The NRA is a non-profit organization representing approximately 4 million members and supporters nationwide, including hunters and anglers who hunt and fish on Canaan Valley Refuge.  *E.g.,* LaCivita Decl., ¶¶ 4–5; Ex. D, Savani Decl., ¶¶ 3–4.  The NRA and its members are dedicated to protecting, promoting, and preserving America's hunting heritage for the common good, and general welfare of the public.  Savani Decl., ¶¶ 5–6.  The NRA played an active role in the passage of virtually all hunting legislation over the last 30 years. *Id.* ¶ 8.  NRA's support for the Improvement Act can be found throughout the Act's legislative history.  *Id.* ¶ 9. The NRA has intervened in lawsuits challenging the use of lead ammunition on federal lands in the past.  *See, e.g., Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 21-15907, 2023 WL 5660071, at *3 (9th Cir. Sept. 1, 2023).  The NRA has members who plan to take advantage of the hunting opportunities on Canaan Valley Refuge.  LaCivita Decl., ¶ 5; Savani Decl., ¶ 10.

---

[6] SCI's comment letter in response to the Proposed Hunt Fish Rule is available at https://www.regulations.gov/comment/FWS-HQ-NWRS-2022-0055-9763.

### C.       <u>Sportsmen's Alliance Foundation</u>

SAF is a 501(c)(3) organization dedicated to protecting the heritage of America's sportsmen and women.  Ex. E, Adkins Decl., ¶ 3.  SAF represents both individual and organizational members throughout the country who use the Refuge System, including members who hunt and fish at Canaan Valley Refuge.  *Id.* ¶¶ 5, 10; Ex. F, Jones Decl.,  ¶ 3.  SAF has long promoted access to refuges and corresponding opportunities for sportsmen and women to hunt and fish on those lands.  Adkins Decl., ¶¶ 6–7.  SAF routinely intervenes in litigation to defend the Refuge System, including prior suits that upheld the opening and expansion of hunting on over sixty refuges from 1997 to 2005.  *See Fund for Animals v. Hall*, 777 F. Supp. 2d 92 (D.D.C. 2011); Adkins Decl., ¶ 6.  SAF also regularly participates in the rulemaking process and management of refuges by submitting public comments, and SAF expressed "serious concern and opposition" to the Service's plan in the Proposed Hunt Fish Rule to prohibit the use of lead ammunition and tackle on refuges, including Canaan Valley Refuge.[7]  *Id.* ¶ 8.  Furthermore, SAF recently testified before the United State Congress's Subcommittee on Water, Wildlife, and Fisheries in opposition to the 2022 Hunt Rule's plan to phase out the use of lead on nine refuges by 2026.  *Id.* ¶ 9.  Finally, members of SAF plan to take advantage of the hunting and fishing opportunities on Canaan Valley Refuge using lead ammunition and lead fishing tackle, actions that may be prohibited if Plaintiffs prevail in this litigation.  Jones Decl. ¶¶ 3–5, 9.

---

[7] SAF's comment letter in response to the Proposed Hunt Fish Rule is available at https://www.regulations.gov/comment/FWS-HQ-NWRS-2022-0055-9646.

IV.     **ARGUMENT**

A.     <u>**The Hunting Coalition should be granted intervention as of right.**</u>

The Court should grant the Hunting Coalition's motion to intervene as of right.  First, the Hunting Coalition has standing to defend the 2022 Hunt Fish Rule.  "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability."  *Crossroads Grassroots Policy Strats. v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015).

Second, the Hunting Coalition satisfies all requirements of Federal Rule of Civil Procedure 24(a).  Under Rule 24(a), a court "must permit anyone to intervene," when (1) the motion is timely, (2) the motion demonstrates a "legally protected interest in the action," (3) the action "threaten[s] to impair that interest," and (4) no existing party can adequately represent the intervenor's interests.  *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).  Rule 24 is construed liberally by this Court to advance the federal policy that favors broad participation by interested parties in litigation.  *See, e.g., Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) (Rule 24 provides a "liberal and forgiving standard"); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) ("the D.C. Circuit has taken a liberal approach to intervention" and "the purposes of Rule 24 [will be] best served by permitting the prospective intervenors to engage in all aspects of this litigation").

1.     **The Hunting Coalition has Article III standing.**

The Hunting Coalition has standing because its members' interests will be injured if Plaintiffs succeed in forcing the Service to state that it will phase out the use of lead ammunition and tackle on Canaan Valley Refuge.  This Court's dismissal of Plaintiffs' Complaint and acceptance of the 2022 Hunt Fish Rule will prevent those potential injuries.

Injury in fact is established "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots*, 788 F.3d at 317. "[E]ven where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact." *Id.* at 318. "[T]he 'threatened loss' of that favorable action constitutes a 'concrete and imminent injury.'" *Id.* (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003)). The causation and redressability requirements are satisfied when "a favorable decision from this court would preserve that benefit" enjoyed by the proposed defendant-intervenor. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, No. 22-cv-1716, 2022 WL 16833967, at *3 (D.D.C. Nov. 9, 2022).

In this case, the Hunting Coalition and its members directly benefit from the fact the Service did not finalize the proposed pledge to phase out lead ammunition and tackle on Canaan Valley Refuge. Plaintiffs challenge the very same decision that benefits the Hunting Coalition and its members. The risk of losing those benefits through a ruling favorable to Plaintiffs satisfies the injury in fact element of standing. Causation and redressability are satisfied because dismissal of Plaintiffs' Complaint would preserve the use of lead ammunition and tackle on the Refuge, in accordance with State law and the status quo.

The attached declarations demonstrate the Hunting Coalition's standing. SCI and NRA member Mr. LaCivita has hunted and fished with lead on Canaan Valley Refuge and has plans to hunt and fish using lead ammunition and tackle on the Refuge in the future. LaCivita Decl., ¶¶ 4–5. Likewise, SCI member and employee Mr. LaCivita Jr. has plans to hunt and fish on the Refuge in the future. LaCivita Jr. Decl., ¶ 5. The LaCivitas want to continue hunting and fishing on Canaan Valley Refuge and prefer to use lead ammunition and tackle versus non-lead

alternatives because they are more familiar with lead ammunition and tackle and it is less expensive and easier to source.  LaCivita Decl., ¶ 6; LaCivita Jr. Decl., ¶ 6.  Similarly, SAF member Mr. Jones has hunted and fished using lead ammunition and tackle on Canaan Valley Refuge in the past and plans to continue to do so in the future, provided that such opportunities remain permissible.  Jones Decl., ¶¶ 3–5, 9.  The Hunting Coalition's members are concerned that a plan to prohibit or phase out the use of lead ammunition and tackle—as a result of a ruling in Plaintiffs' favor—would diminish their access to and enjoyment of hunting and fishing opportunities on Canaan Valley Refuge.  In response to a plan to prohibit or phase out lead, Hunting Coalition members likely would choose to hunt and fish elsewhere.  LaCivita Decl., ¶¶ 7–8; LaCivita Jr. Decl., ¶¶ 7–8; Jones Decl., ¶ 9.  A ruling against Plaintiffs in this litigation would maintain the status quo and prevent these potential injuries to the Hunting Coalition's members' interests.

Accordingly, the Hunting Coalition has demonstrated its standing to intervene to defend the challenged decision.

### 2.    The motion to intervene is timely.

The first element of Rule 24(a) is satisfied because this motion was filed at the very earliest stages of this case.  "Timeliness 'is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need of intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'"  *Humane Soc'y of the U.S. v. U.S. Dept. of Agric.*, 19-CV-2458, 2023 WL 3433970, at *7 (D.D.C. May 12, 2023) (citing *Amador Cnty. v. U.S. Dep't of Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014)).  Courts routinely find intervention motions are timely when filed within a few months of the plaintiff's

complaint and the defendant's responsive pleading, and before any substantive developments in the case have occurred.  *E.g.*, *Fund for Animals, Inc.*, 322 F.3d at 735 (motion to intervene was timely as it was filed less than two months after the plaintiffs filed their complaint); *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.D.C. 2014) (motion filed three months after complaint and before any substantive progress had occurred was timely).

This motion is timely because it was filed less than six weeks after the Complaint was filed and before Federal Defendants' responsive pleading.  No substantive developments have occurred: the existing parties have not filed any dispositive motions, the Court has not made any rulings or set a briefing schedule, and the Joint Meet and Confer Report has not yet been filed. Allowing the Hunting Coalition to intervene now will not disrupt the litigation or prejudice the parties.  *Roane*, 741 F.3d at 151.  Accordingly, the motion is timely.

> **3.     The Hunting Coalition has significant protectable interests in the subject matter of this litigation.**

The Hunting Coalition has significant protectable interests in maintaining methods of harvest on the Canaan Valley Refuge allowed under State law and maintained under the 2022 Hunt Fish Rule.[8]  The second element of Rule 24(a) is not a high bar; rather, it "is primarily a practical guide, with the aim of disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).  If "the intervenor will either gain or lose by the direct legal operation and effect of the judgment," then it has a legally protectable interest in the case.  *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012) (citations and quotations omitted).

---

[8] Under Circuit caselaw, if a proposed intervenor demonstrates standing, it demonstrates "*a fortiori*" that it has the required interest.  *Crossroads Grassroots*, 788 F.3d at 320 (citing *Fund for Animals, Inc.*, 322 F.3d at 735).

Here, there is no question that Hunting Coalition members who hunt and fish with lead ammunition and tackle on Canaan Valley Refuge have an interest in the subject matter of the litigation. As documented above and in the attached declarations, Hunting Coalition members have hunted and fished with lead ammunition and tackle and have future plans to do so. LaCivita Decl., ¶ 5; LaCivita Jr. Decl., ¶ 5; Jones Decl., ¶¶ 4–5, 9. The 2022 Hunt Fish Rule, in which the Service chose to not prohibit or phase out the use of lead on the Refuge, directly benefits those members and their interests in using lead on the Refuge. These members are concerned about how "phasing out" the use of lead ammunition and tackle, even a proposed restriction to be adopted in 2026, will impact their ability to enjoy these public lands. *E.g.*, LaCivita Decl., ¶ 7–8; LaCivita Jr. Decl., ¶¶ 7–8; Jones Decl., ¶¶ 5, 9. They would like to continue to use the Refuge as they have historically done, hunting and fishing with lead ammunition and tackle.

Moreover, the Hunting Coalition satisfies this element because the organizations' missions benefitted and continue to benefit from the challenged aspects of the 2022 Hunt Fish Rule. Each organization advocates for existing and increased hunting access, including methods of harvest, as part of its mission. Goodenow Decl., ¶¶ 4–5, 8; Savani Decl., ¶¶ 5–7; Adkins Decl., ¶ 4. Thus, all three organizations supported the Service's decision to engage in further discussions with the State and make a future decision regarding the use of lead ammunition and tackle on Canaan Valley Refuge.

The interests of the Hunting Coalition and its members in taking advantage of the legal, regulated hunting and fishing opportunities and methods of harvest provided in the 2022 Hunt Fish Rule are strongly related to Plaintiffs' claims. The Hunting Coalition has thus demonstrated

"significant, protectable interests" in the 2022 Hunt Fish Rule and satisfies the second element of Rule 24(a).

> **4.      Disposition of this case may impair the Hunting Coalition's ability to protect its interests.**

The Plaintiffs' requested set aside and remand of the 2022 Hunt Fish Rule may impair the interests of the Hunting Coalition and its members by ultimately restricting the methods of harvest on Canaan Valley Refuge.  The impairment inquiry is not a rigid one: courts look to the "practical consequences" of denying intervention, including economic impacts.  *Fund for Animals, Inc.*, 322 F.3d at 735.  A proposed intervenor will be practically disadvantaged by the disposition of the action where the government's "decision below was favorable to [the proposed intervenor], and the present action is a direct attack on that action."  *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010); *see also Dist. of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) ("Courts have found that 'disposing of [an] action may as a practical matter impair or impede' a proposed intervenor's interests when the disposition of the action would result in a substantial change in the status quo with respect to those interests.") (quoting Fed. R. Civ. P. 24(a)(2)); *Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 44 (D.D.C. 2007) (finding proposed intervenor's interest might be impaired by lawsuit challenging a "not warranted" listing determination, which the proposed intervenor had supported).

As described above and in the attached declarations, resolving this case in Plaintiffs' favor could substantially affect hunters and anglers by obstructing methods of harvest on Canaan Valley Refuge.  A remand of the 2022 Hunt Fish Rule may result in the prohibition or a "phase out" of lead ammunition and tackle on Canaan Valley Refuge, which would cause significant losses to existing hunting and fishing access on the Refuge.  *E.g.*, LaCivita Decl., ¶ 7–8;

LaCivita Jr. Decl., ¶¶ 7–8; Jones Decl., ¶ 9.  Non-lead ammunition is not available as readily, easily, or cheaply as lead ammunition, especially for hunting a range of species on the refuge. *E.g.*, LaCivita Decl., ¶ 6–7; LaCivita Jr. Decl., ¶ 6; Jones Decl., 4.  As organizations, SCI, NRA, and SAF's abilities to promote hunting and fishing with state-authorized methods of harvest will be diminished should Plaintiffs succeed.  Thus, the Hunting Coalition has satisfied Rule 24(a)'s third requirement by showing that their organizational and their members' interests may be impaired by this action.

### 5. Federal Defendants do not adequately represent the Hunting Coalition's interests.

The Hunting Coalition also satisfies the final element for intervention as of right because the existing parties, including the Federal Defendants, do not adequately represent the Hunting Coalition's interests.  This requirement, like the others, is "not onerous."  *Fund for Animals*, 322 F.3d at 735; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (holding a proposed intervenor need only show the existing defendant's representation "may" be inadequate, and this requirement is "minimal").  "[T]he D.C. Circuit has traditionally 'look[ed] skeptically on government entities serving as adequate advocates for private parties.'"  *Humane Socy. of the U.S.*, 2023 WL 3433970, at *9 (quoting *Crossroads Grassroots*, 788 F.3d at 321). The fourth element is especially "not onerous" to prove where, as here, the parties' positions were previously opposed.  *E.g.*, *Crossroads Grassroots*, 788 F.3d at 321.  And courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."  *Fund for Animals*, 322 F.3d at 736.

In *Fund for Animals*, the D.C. Circuit held that a wildlife agency's interest was not adequately represented by existing defendants.  The Court acknowledged the Service's role was to represent that of the U.S. government agency which regulated imports of argali sheep, and the

Service "might" have a different understanding of the impacts of hunting than did the Mongolian government agency which sought to intervene. *Id.* It was "not hard" for the court to imagine how the Mongolian government agency's interests "might diverge" from the Service's. In *Crossroads Grassroots*, the D.C. Circuit reversed the district court's holding that the agency— which had been investigating the proposed intervenor—adequately represented the proposed intervenor's interests. 788 F.3d at 321. The Court rejected the conclusion that the parties' interests were aligned, just because the agency and proposed intervenor were defending the same decision. *Id.* Rather, it pointed out that "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'" *Id.* (citation omitted). The D.C. Circuit found it "apparent" that the proposed intervenor's interests differed from the agency's, even when they sought the same outcome, because they had held opposing positions in the administrative proceeding. *Id.* (citations omitted).

Here, even though the 2022 Hunt Fish Rule's treatment of Canaan Valley Refuge aligned with the Hunting Coalition's interests as related to the use of lead ammunition and tackle, the Hunting Coalition opposed and continues to disagree with many statements about the use of lead in the Rule. Despite a "substantial number of commenters express[ing] opposition to the Service requiring the use of non-lead ammunition and/or fishing tackle on Service land and waters," the Service disagreed and declined to expand any hunting or fishing opportunities that use lead. 87 Fed. Reg. at 57112. SCI, SAF, and their members raised many arguments related to the use of lead ammunition and tackle in their public comments.[9] In response, the Service disagreed with certain of those arguments and declined to make any changes from the Proposed Hunt Fish Rule

---

[9] SCI's and SAF's comment letters are available at https://www.regulations.gov/comment/FWS-HQ-NWRS-2022-0055-9763 and https://www.regulations.gov/comment/FWS-HQ-NWRS-2022-0055-9646.

related to the use of lead ammunition or tackle, except its Canaan Valley Refuge decision.  87 Fed. Reg. at 57112–19.  Therefore, it is not only "not hard" to imagine, but documented that the Service's and the Hunting Coalition's interests may diverge with respect to findings in the 2022 Hunt Fish Rule.  A tension exists between the Service's and the Hunting Coalition's positions regarding lead ammunition and tackle that precludes the Service from adequately representing the Hunting Coalition's interests.

The Hunting Coalition's participation can benefit the Court in understanding the State's objections and the Service's decision in the 2022 Hunt Fish Rule.  The D.C. Circuit has acknowledged the potential benefits offered by an intervenor whose depth of interest can enhance the defense provided by a more broadly concerned governmental entity.  *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (granting motion by intervenor "likely to serve as a vigorous and helpful supplement to [agency's] defense").

For these reasons, the existing parties to this action may not adequately represent the Hunting Coalition's interests, satisfying the fourth element.  Accordingly, the Hunting Coalition has demonstrated that it meets all four elements for intervention as of right under Federal Rule of Civil Procedure 24(a), and the Court should grant its motion to intervene.

**B.     Alternatively, the Hunting Coalition should be granted permissive intervention.**

In the alternative, the Hunting Coalition respectfully requests leave to intervene under Federal Rule of Civil Procedure 24(b).  Under Rule 24(b), "on timely motion," a court may permit a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Rule 24(b) … provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact."  *Nuesse*, 385 F.2d at 704.  The D.C. Circuit has adopted a flexible

18

reading of Rule 24(b): "[a]lthough the rule speaks in terms of a 'claim or defense' this is not interpreted strictly so as to preclude permissive intervention." *Id*.

As explained above, the Hunting Coalition's motion is timely. The Hunting Coalition's organizations and their members have significant protectable interests in the subject matter of this action. The Hunting Coalition's defenses will respond to Plaintiffs' claims and will include, but may not be limited to, arguments in support of the legality of the 2022 Hunt Fish Rule. The Hunting Coalition's defenses share substantial questions of law and fact with the claims raised by Plaintiffs' Complaint and Federal Defendants' likely defenses.

Moreover, by allowing the Hunting Coalition to intervene, the Court will have parties to this action that will advocate for the rights and interests of those who wish to use lead ammunition and tackle on Canaan Valley Refuge. The Hunting Coalition will provide what "can reasonably be expected to contribute to the informed resolutions of . . . questions when, and if, they arise before the District Court." *Natural Res. Def. Council*, 561 F.2d at 913.

Intervention at this time will not unfairly delay or prejudice the adjudication of the parties' rights. The case is in its earliest stages and, as they have done in countless other cases, the Hunting Coalition will abide by all briefing schedules established by this Court and will work to avoid duplicative briefing. As Rule 24(b) references delay or prejudice to the "adjudication" of the parties' right, not the rights themselves, the focus is on whether intervention will help or hinder the Court in resolving the case. As engaged defendant-intervenors, the Hunting Coalition organizations have proven helpful in the resolution of other wildlife and hunting cases, and can do so here. Accordingly, the Court should grant permissive intervention if it denies intervention as of right.

**C.**    **As a final alternative, the Hunting Coalition requests amicus curiae status**.

As a final alternative, the Hunting Coalition respectfully requests that the Court allow it to participate as an amicus curiae with the ability to submit amicus arguments at each stage of the case.  The Court should use its "broad discretion" to permit the Hunting Coalition to participate in this suit as an amicus curiae, if it denies the motion to intervene.  *Natl. Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007).  That participation is especially appropriate here because this is a case of "general public interest."  *United States v. Philip Morris USA Inc.*, No. 99-CV-2496, 2005 WL 8160465, at *1 (D.D.C. Sept. 1, 2005).  It is also appropriate to allow the Hunting Coalition to participate as an amicus to represent the interests of hunter and angler conservationists who participate in hunting and fishing activities with lead ammunition and tackle on the Canaan Valley Refuge, and whose interests are not represented by Federal Defendants responsible for representing a broad range of constituencies.

**V.**    **CONCLUSION**

For the reasons stated above, the Hunting Coalition respectfully requests that the Court grant its motion to intervene as of right, or with the Court's permission, under Federal Rule of Civil Procedure 24.  As a final alternative, the Hunting Coalition requests that the Court grant it leave to participate as an amicus curiae in this case.

Respectfully submitted this 8th day of September 2023.

/s/ Jeremy Clare
Jeremy Clare (Bar No. 1015688)
Regina Lennox (Bar No. 1671299)
Safari Club International
501 2nd Street NE
Washington, DC 20002
(202) 543-8733
jclare@safariclub.org
rlennox@safariclub.org

*Attorneys for Proposed Defendant-Intervenor
Safari Club International*

Michael Jean (Bar No. 1601141)
Erin Erhardt (Bar No. CO00110)
National Rifle Association of America
11250 Waples Mill Road
Fairfax, VA 22030
(703) 267-1158
mjean@nrahq.org
eerhardt@nrahq.org

*Attorneys for Proposed Defendant-Intervenor
National Rifle Association of America*

James Lister (Bar No. 447878)
Brian V. Gerd (Bar No. 90001929)
Birch Horton Bittner & Cherot, P.C.
1150 Connecticut Avenue, NW, Ste. 350
Washington, DC 20036-4165
(202) 659-5800
jlister@bhb.com
bgerd@bhb.com

*Attorneys for Proposed Defendant-Intervenor
Sportsmen's Alliance Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September 2023, I electronically filed the

foregoing document with the Clerk of the Court via the CM/ECF system which will send

notification of such filing to the attorneys of record.


*/s/ Jeremy Clare*
Jeremy Clare